**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1.  TERRY L. TEICHMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-14- |
| | ) | |
| 1.  CHEROKEE STRIP CREDIT UNION, | ) ) | |
| | ) | **Jury Trial Demanded** |
| Defendant. | ) | **Attorney Lien Claimed** |

**COMPLAINT**

**COMES NOW** the Plaintiff, Terry L. Teichmer, and for her Complaint in the above-entitled action, alleges and states as follows:

**PARTIES**

1. Plaintiff, Terry L. Teichmer, is an adult female resident of Kay County, Oklahoma.

2. The Defendant is Cherokee Strip Credit Union, an entity doing business in Kay County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (b) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), as amended, and the ADA Amendments Act ("ADAAA"); (c) whistleblowing in violation of Oklahoma state law; and failure to pay overtime wages in

violation of the Fair Labor Standards Act ("FLSA").

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the claims arose in and around Kay County, and Defendant is located and/or doing business in such county and may be served in that county. Kay County is located within the Western District of the United States District Court of Oklahoma, wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies. She filed an EEOC Charge of Discrimination on or about June 25, 2014. The EEOC issued a Notice of Right to Sue dated on or about July 10, 2014, which Plaintiff received thereafter by mail. She has timely filed her Complaint within ninety (90) days from her receipt of the same.

## STATEMENT OF FACTS

7. Plaintiff was born in November 1957, making her over the age of forty (40) at all times relevant hereto.

8. Teichmer began her lengthy career with Cherokee Strip Credit Union ("CSCU") as a Steno Clerk on or about August 16, 1982. Teichmer held several positions throughout her employment and was ultimately promoted to loan officer. Her job performance while employed was at least satisfactory, if not excellent. In fact, Teichmer was

awarded the "Employee of the Month" award for the month of February 2014.

9. On or about November 15, 2013, President Howard Sissil retired. At that time, Rick Menton was selected as Interim CEO. As such, Menton became Teichmer's immediate supervisor.

10. Teichmer is a qualified individual with a disability in that she suffers from migraines so severe that she was forced to miss work. When Teichmer missed work, she notified Menton or another supervisor that she had a migraine and would not be in to work. Due to her medical condition, Teichmer is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she was disabled, has a record of a disability, and/or was perceived as disabled. Further, her disability substantially limits and/or limited her in one or more of her major life activities, including but not limited to hearing, seeing, and standing. Her disability affects one or more of her internal bodily processes, including but not limited to normal neurological and nervous system function. However, at all times relevant hereto, Teichmer was able to perform the essential functions of her job with or without reasonable accommodations.

11. From in or around October to December 2013, Teichmer's workload tripled. For instance, in November 2013, Teichmer processed over 70 loans while the other two (2) loan officers processed less than 20 loans each.

12. And, during this time, Menton instructed Teichmer to process loans against CSCU's written policy and further instructed her not to discuss the change in practice with

the Board. Instead of offering Teichmer advice or policy changes in writing, as she requested, Menton threatened her job.

13.     Although Teichmer was told that the loans were authorized by Menton and/or the credit committee, she was still required to process against CSCU's policy. This conduct would also have reflected poorly on Teichmer's and CSCU's performance during future audits by federal and state government agencies overseeing the operation of credit unions. Deficiencies noted by government agencies during the audits could result in CSCU losing its ability to conduct business and significant fines being assessed. Such practices further controverted 6 O.S. §2001 *et. seq.,* Okla. Admin. Code §180, and National Credit Union Administration regulations' stated purpose for credit unions. Specifically, credit unions are non-profit entities. Oklahoma and NCUA regulations state that credit unions are to promote thrift among its members and create a source of credit for members at legitimate interest rates for provident or productive purposes. The manner in which Plaintiff was instructed to conduct business was not congruent with such purpose.

14.     On or about December 31, 2013, Deanna Gilliland (who is significantly younger than Teichmer) was hired by Menton as a mortgage officer. Thereafter, Gilliland was treated more favorably than Teichmer. For instance, Gilliland was permitted to process consumer loans, even when the customers specifically asked for Teichmer to help them. Gilliland was also not required to turn in her work to Menton daily (unlike Teichmer). And, Menton often had closed door meetings with Gilliland, but did not speak to Teichmer unless

he was disciplining her.

15.     On or about February 4, 2014, Menton wrote Teichmer up for allegedly having incomplete loans and liens that had not been filed. Teichmer refused to sign the write-up because the delayed loans were not caused by any fault of Teichmer. Further, although she continually asked for assistance in order to keep up with filing liens and completing loans, CSCU refused to provide assistance. This was the first write-up Teichmer received in her thirty-one (31) years of employment with CSCU.

16.     On or about February 24, 2014, Jeff Dahlgreen was hired as the Lending VP. Thereafter, Dahlgreen began verbally criticizing Teichmer's work on loans. Dahlgreen also told Teichmer that Menton wanted to fire her because Teichmer had allegedly "screwed up" all the loans. Teichmer told Dahlgreen that she was processing loans according to Menton's instructions in December 2013. Teichmer also explained to Dahlgreen her hesitancy in processing loans against the established written policy, including her concern about government audits. Dahlgreen told Teichmer to begin processing loans pursuant to his newly created procedure from then on. However, Teichmer was still being directed to process loans outside CSCU's established policy, which was a violation of 6 O.S. §2001 *et. seq.* and Okla. Admin. Code §180 and NCUA regulations. In fact, Teichmer was forced to process a loan at a certain amount because a customer was promised that rate by Dahlgreen without even having the customer submit an application.

17.     On or about March 17, 2014, during a loan officer meeting, Teichmer

expressed concerns that loans were being processed against policy. Later that day, Menton and Dahlgreen told Teichmer that she was terminated because she was allegedly a liability to the company. However, this was merely pretext. Teichmer was terminated after nearly thirty-two (32) years of dedicated service because of her age, disability and in retaliation for questioning Defendant's unlawful loan practices.

18.     Upon information and belief, Teichmer's job duties are being performed by significantly younger individuals.

19.     Beginning in or around November 2011, Menton refused to pay Teichmer for overtime pay when she worked in excess of forty (40) hours per week. Menton was aware that Teichmer worked more than (40) hours per week but did not pay Teichmer overtime.

20.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

21.     The matters alleged above constitute violations of the ADEA in the form of age discrimination.

22.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was terminated, and her position was not eliminated at the time of her termination.

23. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

## COUNT II - ADA AND ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

24. The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

25. As shown above, Plaintiff was a qualified individual with a disability in that she suffers from impairments (i.e., migraine headaches) which substantially limit her ability to perform one or more major life activities as set forth above.

26. Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

27. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

28. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III - Whistleblowing

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

29. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

30. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

31. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT IV - Violation of the FLSA

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32. The acts described above constitute violations of the Fair Labor Standards Act for failure to pay overtime to Plaintiff.

33. The FLSA requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per week.

34. Plaintiff, a non-exempt employee, routinely worked more than forty (40) hours per week without overtime compensation.

35. Defendant was aware that Plaintiff worked more than forty (40) hours per week.

36. Defendant knew, or showed reckless disregard for, the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA.

37. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff suffered a loss of income and other damages. As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

38. By failing to accurately record, report and/or preserve records of all the hours worked by Plaintiff, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine their wages, hours and other conditions and practice of employment in violation of the FLSA.

39. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a). Defendant knew, or showed reckless disregard for the fact that its compensation practices were in violation of these laws.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, liquidated damages, and punitive damages together with pre- and post-judgment interest, costs, attorney's fees, all other damages available under federal and state law, and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS <u>7th</u> DAY OF OCTOBER, 2014.**

                                                s/Jana B. Leonard
                                                JANA B. LEONARD, OBA# 17844
                                                LAUREN W. JOHNSTON, OBA# 22341
                                                LEONARD & ASSOCIATES, P.L.L.C.
                                                8265 S. WALKER
                                                OKLAHOMA CITY, OK 73139
                                                (405) 239-3800        (telephone)
                                                (405) 239-3801        (facsimile)
                                                leonardjb@leonardlaw.net
                                                johnstonlw@leonardlaw.net

                                                JURY TRIAL DEMANDED
                                                ATTORNEY LIEN CLAIMED